UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AKIB ABIOLA,

    Plaintiff,

v.

SELECT PORTFOLIO SERVICING,
INC., DLJ MORTGAGE CAPITAL, INC.,
and JPMORGAN CHASE BANK, N.A.,

    Defendants.

_____/

Case No. 2:17-cv-13741
District Judge Arthur J. Tarnow
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT (ECF No. 47)

I.      Introduction

Plaintiff Akib Abiola brought this action in connection with foreclosure proceedings on his home in West Bloomfield, Michigan. (ECF No. 1). In 2018, the parties reached a settlement, and the case was dismissed. (ECF No. 46). Approximately two and a half years later, two of the defendants, Select Portfolio Servicing, Inc. (SPS) and DLJ Mortgage Capital, Inc., moved to enforce the parties' settlement. (ECF No. 47). This motion was referred to the undersigned. (ECF No. 48). For the reasons set forth below, the undersigned RECOMMENDS that defendants' motion to enforce the settlement agreement be GRANTED.

1

II.   Background

On November 21, 2018, Abiola, with the representation of counsel, signed a Confidential Settlement Agreement and Release (settlement agreement).  (ECF No. 47-2, PageID.670).  Defendants signed the settlement agreement on November 30, 2018, and JP Morgan Chase Bank, N.A. (Chase) signed the settlement agreement on December 4, 2018.  (*Id*.).  On December 11, 2018, the Court entered a stipulated order of dismissal with prejudice in light of the executed settlement agreement.  (ECF No. 46).

The settlement agreement, as described by defendants, "set forth the following terms: (i.) Defendants would make the First Payment by check payable to Plaintiff and sent to his counsel's office within fourteen (14) days after all parties executed the Agreement, Defendants received a properly completed IRS Form W-9, and the instant action was dismissed by this Court; (ii.) Plaintiff would voluntarily vacate the property, leaving it in 'broom-swept' condition on or before 12:00 p.m., January 4, 2019; and (iii.) Defendants would make the Second Payment once they received confirmation that the Property was empty."  (ECF No. 47, PageID.651).  Abiola also agreed "not to contest the foreclosure of the Mortgage in any court, venue, or by way of any legal proceeding, at any time[.]" (ECF No. 47-2, PageID.665).

Contrary to the settlement agreement, Abiola refused to vacate the property. On December 29, 2018, the most recent attorney representing Abiola, Scott Smith, emailed defendants' attorney and indicated that he would only be further representing Abiola to the extent necessary to consummate the signed settlement agreement. (ECF No. 47-8, PageID.688). After that point and continuing to the present, Abiola has been proceeding *pro se*.

On January 9, 2019, over a month after he accepted the first payment, one month after the case was dismissed, and just five days before he was required to vacate the property, Abiola sent an email to defendants' attorneys informing them that he had told his attorney "not to file any settlement or withdraw of my lawsuit with the court[,]" and that he had asked his attorney about refunding the first settlement check. (ECF No. 47-4, PageID.675). Abiola further wrote that he had "received additional letters from SPS stating categorically that I am being considered for a loss mitigation." (*Id.*). Defendant's attorney, Laura Baucus, emailed Abiola back asking him to confirm that he had not vacated the property as he agreed to do in the settlement agreement and informed him that her client no longer had an obligation to remit the second payment. (ECF No. 47-5, PageID.677).

Abiola responded via email that "your client SPS has offered us a loss mitigation instead of vacating the house and my ex-wife and I have accepted their

3

loss mitigation offer and we would be staying in the house." (ECF No. 47-6, PageID.680). Abiola further stated, "I was advised that since the loss mitigation came after the settlement that the loss mitigation offer now supersedes the settlement and as such nullified the settlement since it came directly from your client unsolicited." (*Id*.). He reiterated that he wanted his attorney to refund the settlement money sent by Chase. (*Id*.).

Baucus wrote a letter to Abiola dated May 9, 2019, in response to his "several emails sent to Dykema and SPS during and around the week of April 22, 2019, and also contains supplemental information to SPS' letter directed to [Abiola] dated April 23, 2019." (ECF No. 47-7, PageID.684). The letter contained six sections. (ECF No. 47-7.).

First, Baucus clarified that while SPS did send Abiola an Assistance Review Decision/Trial Modification Plan (modification plan) on January 10, 2019, that this modification plan was premised on Abiola making six required payments of which Abiola made only one. (*Id*., PageID.684). Second, Baucus asserted that SPS had been cooperating with requests for information sent by various state and federal agencies in response to complaints filed by Abiola. (*Id*.). Third, Baucus disabused Abiola of the notion that he was entitled to the second settlement payment even though he had failed to vacate the property. (*Id*., PageID.685). Fourth, SPS disagreed with Abiola's contention that it breached the settlement agreement and

4

noted that the modification plan was neither an amendment to the settlement agreement nor a breach of the settlement by SPS. (*Id.*). Fifth, Baucus refused to address allegations of wrongdoing by defendants that may have occurred before the signing of the settlement agreement and reminded Abiola that he released any and all claims related to such alleged wrongdoing when he signed the settlement agreement. (*Id.*, PageID.685-686). Sixth, Baucus detailed Abiola's attempts to appeal the cancellation of the modification plan. (*Id.*, PageID.686).

Despite having no obligation to do so, defendants continued to attempt to work with Abiola regarding the property within the confines of the settlement agreement. During a June 10, 2019 phone call between Baucus and Abiola, defendants offered the remaining payment due under the settlement agreement of $30,000 provided Abiola and any other occupants at the property vacate within thirty days with the payment to be made once the property is vacated. According to Baucus' June 12, 2019 letter confirming the phone conversion, Abiola "did not express any interest in this offer." (ECF No. 52-2, PageID.710).

Eventually, after nearly two and half years since the case was dismissed based on the settlement agreement, and with Abiola still apparently residing at the property, defendants filed the instant motion to enforce the settlement agreement.

### III. Analysis

#### A. Legal Standard

5

Before the Court can enforce a settlement agreement, it must first "conclude that agreement has been reached on all material terms." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). "Whether the parties actually reached an agreement is a question of fact for the district court," *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010), which is governed by state contract law, *Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, 515 F. App'x 494, 498 (6th Cir. 2013) ("Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law.").

Under Michigan law, a "contract is formed upon offer and acceptance and a mutual assent or meeting of the minds on all essential terms." *Masco Cabinetry Middlefield, LLC v. Cefla N.A., Inc.*, 637 F. App'x 192, 197 (6th Cir. 2015). Determining whether there was mutual assent between the parties "is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind," *Tillman v. Macy's Inc.*, 735 F.3d 453, 459 (6th Cir. 2013), which requires consideration of the "relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent." *Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581, 589 (6th Cir. 2012); *see also Huntington Nat'l Bank v.*

6

*Daniel J. Aronoff Living Trust*, 305 Mich. App. 496, 508 (2014) ("Courts judge whether there was a meeting of the minds from objective evidence.").

B. Application

Defendants argue that the settlement agreement is a valid, binding contract. (ECF No. 47). They first note the "well settled" principle that a district court has the power to enforce settlement agreements such as the one at issue here. (*Id.*, PageID.653-654). Defendants then go on to state that a settlement agreement is a contract and is, thus, governed by general contract principles. (*Id.*, PageID.654). Here, Michigan's substantive law concerning contracts governs. (*Id.*). Under Michigan law, a contract exists in this case because the parties reached an agreement on material terms and Abiola unequivocally accepted the offer when he signed the settlement agreement. (*Id.*, PageID.657).

The undersigned agrees with defendants' arguments finds that the parties reached an agreement in this case as evidenced by the signed settlement agreement. The settlement agreement comprehensively sets forth the terms of the agreement in easy-to-understand language. In plain terms, the settlement agreement required defendants to make two payments to Abiola—the second of which would occur after he vacated the property. Abiola, in turn, was required to vacate the property, leaving it in "broom-swept" condition, and agree not to contest to foreclosure in any forum. The settlement agreement stated that the parties were represented by

7

counsel and that the parties entered into the settlement agreement voluntarily. (ECF No. 47-2, PageID.664). Based on the written and signed settlement agreement, it is clear that an agreement was reached in this case.

Moreover, as defendants argue, Abiola cannot rescind the settlement agreement. Under Michigan contract law, "[i]n order to warrant rescission of a contract, there must be a material breach affecting a substantial or essential part of the contract." *Omnicom of Mich. v. Giannetti Inv. Co.*, 561 N.W.2d 138, 141 (Mich. App. 1997). Further, only the *nonbreaching* party may successfully argue for recission of a contract. *See id.* ("In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive."). Under the settlement agreement, Abiola was required to vacate the property. He did not do so. Accordingly, he breached the settlement agreement. As a breaching party, Abiola cannot successfully argue for recission of the settlement agreement.

### C. Abiola's Arguments

Abiola raises numerous arguments in his filings. It is difficult to discern what some of the arguments are and none are supported by legal authority. While the undersigned has searched for authority related to each of Abiola's arguments, it is worth noting that "judges have no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). Overall, none of Abiola's

arguments are persuasive and all should fail. The settlement agreement should be enforced.

Abiola first argues that, because this case was dismissed, that "the Court no longer has the power to enforce the settlement agreement according to court rules." (ECF No. 51, PageID.695). This is incorrect. Defendants correctly note that this Court had diversity jurisdiction over this matter and the authority to enforce the settlement agreement. (ECF No. 52, PageID.699).

"This Court has the equitable power to enforce a settlement agreement[.]" *Sedore v. Campbell*, Case No. 19-10311, 2021 WL 2349324, at *1 (E.D. Mich. Mar. 30, 2021) (citing *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)). Furthermore, "[a] district court may enforce a settlement agreement that produced the dismissal of an earlier federal suit, even if it did not retain the authority to do so in a dismissal order, when the court has diversity or federal question jurisdiction over the breach-of-settlement-agreement controversy." *Cernelle v. Graminex, L.L.C.*, 437 F. Supp. 3d 574, 593 (2020) (citing *Limbright v. Hofmeister*, 566 F.3d 672, 676 (6th Cir. 2009) (holding "that *Kokkonen* and this court's case law allow an 'independent basis for federal jurisdiction,' such as diversity or federal question jurisdiction, to support summary enforcement")).

9

Here, Abiola does not dispute that the citizenship of the parties is diverse and that the amount in controversy requirement is met. Thus, Abiola's argument, that this Court lacks the power to enforce the settlement agreement lacks merit.

Abiola next argues that defendants cannot enforce the settlement agreement without Chase's participation. Defendants respond that Abiola cites no authority to support this position and that Abiola cannot raise an argument on Chase's behalf. (*Id.*, PageID.700). Abiola has not cited any legal authority and the undersigned could find none to support this position. Accordingly, the Court should reject this argument.

Abiola also argues that SPS's modification plan offer somehow impacts his obligations under the settlement agreement. However, as defendants note in their reply, it is undisputed that Abiola did not make five out of the six payments required under the modification plan. *See* ECF No. 52, PageID.700-701. Further, he cites no legal authority for the proposition that the modification plan alters the settlement agreement in anyway. Thus, this argument also lacks merit.

Abiola's arguments related to an unsubmitted eviction order and a pending civil rights violation investigation are undeveloped. In his original response, each argument consists of only one sentence,[1] and it is unknown precisely what Abiola

---

[1] The argument regarding the eviction order is as follows: "The eviction order included in the settlement agreement was never signed or executed and it was only enforceable within sixty days and it expired in April 2019." (ECF No. 51,

10

is attempting to argue. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) (internal quotation marks and citations omitted). These perfunctory arguments should, thus, be deemed waived.

Abiola also argues that the statute of limitations has expired related to claims concerning the underlying loan. While this may or may not be true, Abiola misunderstands defendants' motion. Defendants are not bringing a new action to evict Abiola or for nonpayment. Rather, they are simply seeking to enforce a settlement agreement, which is entirely separate from the underlying loan. Defendants correctly argue that, under Michigan law, parties have six years to bring breach of contract actions. *See* M.C.L. 600.5807(9). Defendants filed their motion to enforce the settlement agreement well within the six-year statute of limitations. Thus, Abiola's statute of limitations argument lacks merit.

Abiola further argues that defendants engaged in "fraudulent practices and misrepresentation before the settlement agreement was signed and after it was

---

PageID.695). The argument regarding the civil rights violation investigation is as follows: "There's an ongoing Civil Rights violation investigation currently going on my loan which has extended to others loans that were transferred by Chase and other banks to SPS and the defendants' motion is an attempt to obstruct and circumvent the government investigation." (*Id.*).

11

signed caused the invalidation of the said agreement." (ECF No. 51, PageID.695). Abiola does not state what the alleged fraudulent practices or misrepresentation were. While it is generally true that "[a] party induced by fraud to enter a contract may elect to void the contract[,]" *Diamond Computer Sys., Inc. v. SBC Communications, Inc.*, 424 F. Supp. 2d 970, 981 (E.D. Mich. 2006), Abiola has not described—let alone produced evidence of—any representations made by defendants that were not true when made or that defendants had no intention of fulfilling. Accordingly, the undersigned is not in a position to determine the existence of any fraudulent practices or misrepresentations that may have occurred before the execution of the settlement agreement. Moreover, "the law is clear that the [o]ne who attacks a settlement must bear the burden of showing that the contract he has made [was] tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948). Abiola has not met this burden. Finally, as defendants highlight in their reply, Abiola was represented by counsel when he signed the settlement agreement and the terms of the agreement are unambiguous, thus, it should be enforced. *See* ECF No. 52, PageID.703-704.

Abiola also appears to argue that defendants' attempts to settle this matter after he refused to comply with the terms of the settlement agreement somehow nullify and invalidate the settlement agreement. Abiola does not cite any authority

12

for this proposition, nor was the undersigned able to find any. Accordingly, Abiola's argument should fail.

Overall, Abiola's arguments against the enforcement of the settlement agreement are unavailing. The settlement agreement is valid. Abiola has not complied with the agreement. He has remained at the property for over two years after accepting the first payment. Additional attempts to resolve the dispute within the confines of the settlement agreement have failed.

## IV.  Costs and Fees

Defendants request costs and fees, including attorney fees, in their motion, but fail to include any argument related to this request. "It has long been the general rule in the United States that a prevailing party may not ordinarily recover attorneys fees in the absence of a statute or enforceable contract providing for a fee award." *Shimman v. Int'l Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984). Defendants have not pointed to a statute that would permit them to recover attorney fees. Further, their request for attorney fees does not comport with E.D. Mich. LR 54.1.2(b), which provides:

> A motion for an award of attorneys' fees shall be supported by a memorandum brief as to the authority of the Court to make such an award, and as to why the movant should be considered the "prevailing party," if such is required for the award. The motion shall also be supported by an affidavit of counsel setting out in detail the number of hours spent on each aspect of the case, the rate customarily charged by counsel for such work, the prevailing rate charged in the community for similar services, and any other factors which the Court should consider

in making the award. Within 14 days after filing of the motion, the party or parties against whom the award is requested shall respond with any objections thereto and accompanying memorandum setting forth why the award is excessive, unwarranted, or unjust.

Under these circumstances, defendants' request for fees and costs should be denied.

## V. Conclusion

For the reasons stated above, the undersigned RECOMMENDS defendants' motion to enforce the settlement agreement be GRANTED and Abiola be directed to comply with the settlement agreement.

Dated: December 15, 2021  s/Kimberly G. Altman
Detroit, Michigan  KIMBERLY G. ALTMAN
  United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 15, 2021.

>s/Carolyn M. Ciesla
>CAROLYN M. CIESLA
>Case Manager